**In re Clay B. STATMORE.**

No. 4:CV943259.

United States District Court, D. Nebraska.

Oct. 7, 1994.

Clay Statmore, pro se.

Kathleen Laughlin, Chapter 13 Trustee, Omaha, NE.

Patricia A. Dugan, Asst. U.S. Trustee, Omaha, NE.

## MEMORANDUM AND ORDER ON OBJECTIONS PURSUANT TO BANKRUPTCY RULE 9020(c) AND 9033(b)

URBOM, Senior District Judge.

On July 28, 1994, United States Bankruptcy Judge John C. Minahan, Jr., suspended Clay B. Statmore from practice before the United States Bankruptcy Courts for the District of Nebraska, required Statmore to take immediate steps to assure that substitute counsel be available to represent Statmore's debtor-clients and provided that the court would consider lifting the suspension upon submission of proof that Statmore had paid certain disgorgement claimants or had made arrangements for their payment satisfactory to the court.

The suspension arose from the bankruptcy judge's finding that Statmore had failed to comply with four orders dated October 22, 1993, that approved four settlement agreements whereby Statmore agreed to make disgorgement payments to four clients from whom he had received fees that had not been disclosed to the bankruptcy court.

Objections to the bankruptcy judge's memorandum and order of July 28, 1994, are:

1. no evidence has been presented that Statmore received payments in violation of the Bankruptcy Code;

2. no evidence has been presented that Statmore failed to abide by any court orders other than his failure to abide by the approved settlement agreements;

3. no evidence has been presented that Statmore has failed to comply with laws governing the detention and compensation of attorneys;

4. no evidence has been presented that Statmore has used the bankruptcy laws to delay and postpone the disgorgement of fees by filing a case in which he himself is the debtor;

5. without a finding of wilfulness of conduct the conduct was not contemptuous and therefore should not have been sanctioned; and

6. there has been no evidence to support the court's finding that Statmore was aware of his limited ability to pay at the time he voluntarily agreed to make the payments.

The objections are not well taken.

In accordance with Rule 9033(d) and 9020(c) of the Bankruptcy Rules I have made *de novo* review upon the record, including the tape recordings of the hearings of March 16, 1994, and May 11, 1994, as well as the documents designated by the parties.

The factual findings set out in the memorandum and order of the bankruptcy judge on July 28, 1994, are fully supported by the record or are, for the purposes of the present proceeding, irrelevant. I shall discuss the objections seriatim.

1. Statmore agreed in settlement agreements to make payments to four "unpaid disgorgement claimant(s) in settlement of the trustee's motions for disgorgement of attorney fees filed against Statmore in bankruptcy cases of those claimants. The bankruptcy judge approved those settlement agreements. Whether the payments were in violation of the Bankruptcy Code is of no consequence in this contempt proceeding. The orders approved the settlement agreements. By that approval the order adopted the settlement agreements and thereby required Statmore to make specific payments—$118.20 per month to George and Dorothy Johnson, $107.15 per month to Erick and Gwen Erickson, $81.29 per month to Margaret Vance, and $62.82 per month to Kenneth and Mary Lou Martensen, beginning within seven days after the date of the agreements' receiving final approval from the bankruptcy court. Each agreement also provided that if Statmore fails

"to timely make a payment when due under this settlement agreement, the unpaid disgorgement claimant shall have the right to declare the entire unpaid balance ... immediately due and ... As a sanction for failure to comply with this settlement

agreement ... the Bankruptcy Court may suspend Mr. Statmore from practice before the Bankruptcy Courts in the District of Nebraska...."

██ The suspension comes from failure to obey the court's orders approving the settlement agreements. Statmore is not permitted now to challenge the validity of the settlement agreements or orders. In *United States v. Rylander*, 460 U.S. 752, 756–57, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983), the Court quoted from *Maggio v. Zeitz*, 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948), in saying:

"It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience."

Thus, whether Statmore received payments in violation of the Bankruptcy Code is not an issue now litigable, and is, therefore, irrelevant.

2. Whether Statmore has failed to abide by "any court order other than his failure to abide by the approved Settlement Agreement" is also irrelevant. Failure to abide by orders—there are several orders—approving the settlement agreements is quite sufficient for a finding of contempt.

3. As with the objection set out in paragraph 1 above, the matter of the legality of Statmore's receipt of fees is irrelevant. The contempt action is for disobeying the court's orders, and those orders cannot now be examined for validity.

██ 4. The converting of Statmore's own bankruptcy from a Chapter 13 to a Chapter 7 liquidation within a few days after approval of the settlement agreements legitimately raises the inference of using the bankruptcy laws to delay and postpone the disgorgement. It has had that natural effect, and the bankruptcy judge was justified in finding that the result was intended.

██ 5. Wilfulness is not an element of civil contempt. In *McComb v. Jacksonville Paper Company*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949), the Court said:

"... The absence of wilfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. (Citations omitted). Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. It laid on them a duty to obey.... An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently...."

6. The finding by the bankruptcy judge was that:

"Fourth, the sanctions imposed by this order were specifically agreed to by Mr. Statmore during the pendency of his Chapter 7 case, at which time he was presumably aware of his ability or inability to make payments."

That finding was justified. Although the evidence suggests a general trend toward a reduction of income by Statmore during the periods of and following the signing of settlement agreements, the finding has to do with Statmore's own personal income and obligations. The evidence in no way suggests that Statmore was oblivious to his financial condition. The evidence does not show that there has been a substantial, unexpected shift in his financial fortunes. The trend has been downward to be sure, but the probability is that he was aware of his ability or inability to make payments.

None of the objections goes to the heart of the matter. The simple fact is that Clay B. Statmore was ordered to make certain payments. He did not do so. As to the propriety of the sanction used—suspension and its concomitance until he complies with the orders or made arrangement for repayment of the disgorgement claimants satisfactory to the bankruptcy court—, Statmore offers no

objection, other than those already discussed, none of which has merit. Nevertheless, I shall examine the propriety of the sanction.

 At the hearings of March 16 and May 11, 1994, Statmore offered evidence designed to show that he was unable financially to make the payments. The evidence is not persuasive to justify his actions. The fact is he has made no payments—not a penny—to any of the disgorgement claimants over the eight-month period between the time he was to begin making payments and the hearing of May 11, 1994. Whether any has been made since, the evidence does not show. He made no application to the court for a modification of the orders. He never approached the trustee in an effort to get an agreement for a reduction of the amount of the payments or a delay in the making of them. The evidence supports a finding that he could have made some payments, even if not full payments, during that period of time. In *Securities and Exchange Commission v. Musella*, 818 F.Supp. 600 (S.D.N.Y.1993), the court said:

"When an order requires a party to pay a sum certain, a mere showing that the party was unable to pay the entire amount by the date specified is insufficient to avoid a finding of contempt.... When a party is absolutely unable to comply due to poverty or insolvency, inability to comply is a complete defense.... Otherwise, the party must pay what he or she can. *See Piambino v. Bestline Products, Inc.*, 645 F.Supp. 1210, 1214 (S.D.Fla.1986) ('a person subject to court order must comply to the fullest extent possible, regardless of whether such efforts result in compliance in whole or in part')."

Statmore has continued to have income. He has had other obligations, but he cannot thereby ignore the obligation to comply with court orders to the best of his ability. He cannot unilaterally decide that he will ignore the court orders by fulfilling other obligations. It is possible, of course, that suspension from practicing in the bankruptcy courts of Nebraska will result in less ability to meet his obligations, but that is not necessarily true, and some sanction must be taken that will deepen his awareness of the necessity of his respecting court orders by doing his

best to obey them and, when his best does not permit obeying in full, to seek modification. None of that was done here. The sanction is a reasonable one.

IT IS ORDERED that the objections pursuant to Bankruptcy Rule 9020(c) and 9033(b) are denied and the order of United States Bankruptcy Judge John C. Minahan, Jr., dated July 28, 1994, is adopted and affirmed.